### In re J. M. FISKE & CO.

#### (District Court, S. D. New York.  December 29, 1913.)

#### No. 494.

1. BANKRUPTCY (§ 272*)—ATTORNEYS FOR TRUSTEE—FEES.

The rule that, where attorneys for trustees in bankruptcy have conducted many contested suits in which amounts not extremely large are involved, they may receive 15 per cent. of the amount recovered, does not necessarily apply when a very large sum is involved and recovered, since the work done is the real thing to be paid for, and the amount recovered only to be considered as showing the responsibility involved and the success accomplished.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

2. BANKRUPTCY (§ 272*)—ATTORNEYS FOR TRUSTEES—ATTORNEYS FOR RECEIVER —ALLOWANCES.

Where attorneys for trustees in bankruptcy were also attorneys for a receiver, the performance of whose duties lasted about five months, and the attorneys were allowed $12,500, substantially all for general services outside the litigations which they subsequently conducted for the trustees, none of which was begun until after the trustees' appointment, such allowance should be considered in determining the amount to be allowed for the attorneys' services to the trustees.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

3. BANKRUPTCY (§ 272*)—ATTORNEYS FOR TRUSTEES—FEES OBTAINED IN COLLATERAL LITIGATION.

Petitioners, who were attorneys for the trustees in bankruptcy, were also attorneys for a third person, who was plaintiff in a suit against K. in the proceeds of which the bankrupts were entitled to a twelfth interest. The claim against K. was compromised, and he, as part of the settlement, agreed to pay petitioners the fees in that suit and did pay them $25,000. Held, that the amount so paid on the settlement of such suit was not material on the question of the amount to be allowed petitioners as the attorneys for the trustees.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

4. BANKRUPTCY (§ 272*)—ATTORNEYS FOR TRUSTEES—ALLOWANCE.

Attorneys for trustees in bankruptcy, having been compelled to perform large and valuable services in the administration of an estate, and having collected $52,500 and obtained reductions of claims filed, amounting in the aggregate to about $180,000, thus increasing the dividends on valid claims about 17 per cent., held entitled to $52,500 for their services.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 572, 573; Dec. Dig. § 272.*]

In Bankruptcy. In the matter of bankruptcy proceedings of J. M. Fiske & Co. On application to the court to fix compensation of trustees' attorneys. Fees allowed at $51,000.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

Hays, Hershfield & Wolf, of New York City, petitioners in pro. per.
Cass & Apfel, of New York City, for certain creditors opposing.

HOLT, District Judge. This is an application to the court to fix the compensation of the trustees' attorneys, the referee having certified, pursuant to rule 8 of the Instructions to Referees, that, in his opinion, the attorneys are entitled to more than twice the trustees' statutory fees.

The sum of $65,000, which the trustees' attorneys suggest for an allowance to them in this case, is a very large amount of money—much larger than I have ever awarded as an allowance in any case. Some of the items, making up the aggregate suggested in the memorandum submitted, seem to me, in view of all the circumstances of the case, somewhat too large; the others seem to be entirely reasonable charges. In the case of Ernst v. Mechanics & Metals National Bank, the suit was unprecedented in its nature, involving the legal effect of the arrangements under which, for many years, brokers have been enabled to carry on their business by the certification of their checks by banks in advance of actual deposits to meet them. The questions of fact were complicated, the work of investigating and preparing the evidence onerous, the questions of law difficult, the defense ably and strenuously contested, the trial before Hon. Charles F. Brown as referee, and the hearings on appeal before Judge Hand, the Circuit Court of Appeals, and the United States Supreme Court involved counsel work of the highest ability, and the final result, by which about $270,-000 was collected, was pre-eminently successful.

[1] The petitioners ask for an allowance of $40,000 for their services in this case. This amount is about 15 per cent. of the amount recovered, which, in the case of many contested suits, in which a large but not an extremely large amount is involved, constitutes a proper basis of charge. But when a very large sum is recovered, the same percentage does not necessarily apply. The work done is the real thing to be paid for; the amount recovered is only to be considered as showing the responsibility involved and the success accomplished. It is always difficult to fix the value of an attorney's services in a large litigation. I have no doubt that many lawyers of experience would say that the petitioners' services in this suit were worth $40,000. But that is a very large sum of money to be paid for legal services in any suit, and, in my opinion, that amount is somewhat too large to be allowed in this case. Upon full consideration of all the circumstances of the case, and with the highest appreciation of the value of the petitioners' services in the suit, I have concluded that $32,500 is a proper amount to be allowed for such services.

In the case of Ernst v. Detmer, the suit was carried through all the intermediate courts to the New York Court of Appeals, and about $27,000 recovered. I think $5,000 a reasonable charge in that case. In the case of Ernst v. Levi a settlement was made by which the estate received $11,000 in cash and a release of a claim on a fund in the trustees' hands of about $7,000. I think $3,000 a reasonable charge for that service. In the case of Ernst v. Morrison about $14,000 was

collected. I think $1,500 a reasonable charge for that service. A number of other suits were brought in which judgments were recovered. Small amounts were collected, but that was not the attorneys' fault. I think $500 a reasonable charge for those services. This makes a total charge of $42,500 for services in litigations, some of which were unusually difficult and laborious, in which about $325,000 was collected. The trustees also ask for $15,000 for general services in the case outside of litigations. The estate, in addition to the amounts recovered by litigation, amounted to about $100,000. The bankrupts were stockbrokers. They had done a large business. They owed over a million dollars. Such bankruptcy cases usually involve a great deal of difficult work, especially in the matter of conflicting claims to pledged securities which require elaborate hearings before the referee, and which in fact occurred in this case. The trustees' attorneys contested many claims filed, and obtained reductions of many of such claims, amounting in the aggregate to about $180,000, thus increasing the dividends on valid claims about 17 per cent. The whole estate has been administered promptly, efficiently, and with unusual success.

[2] The attorneys for the trustees, however, were attorneys for the receiver. The receivership lasted about five months, and the petitioners, as attorneys for the receiver, were granted an allowance of $12,500, which was all substantially for general services, outside of the services in litigations, none of which were begun until after the trustees' appointment. A considerable portion of the necessary general services of the attorneys therefore were rendered during the receivership, and such general services may properly be regarded as continuous during the receivership and the trusteeship. I think, under all the circumstances, that a further allowance of $10,000 to the trustees' attorneys for such general services will be sufficient.

[3] It has been suggested that the amount paid to the attorneys on the settlement of the suit against James R. Keene should be taken into consideration. The petitioners were attorneys for the plaintiff in that suit, but that suit was not brought by the trustees. The bankrupts had a one-twelfth interest in the amount recovered in the suit. But although the claim against Mr. Keene grew out of the transactions in the Hocking pool which caused the bankruptcy of Fiske & Co., the conduct of that suit was strictly no part of the work of the attorneys as representing the trustees. As part of the settlement, Mr. Keene agreed to pay the fees of the attorneys, and paid to the petitioners $25,000 as their fee. It is suggested that, if the lawyers' fees had been smaller, Mr. Keene would have paid more to the parties in settlement. But if he had increased the amount paid in settlement by the entire $25,000, the benefit to the estate would have been only one-twelfth of that amount, or about $2,000, and, if any amount were paid as fees, the amount paid in settlement and the consequent advantage to the creditors of the bankrupt would have been correspondingly diminished. I think therefore that the amount paid the petitioners by Mr. Keene, upon the settlement of the suit against him, is substantially immaterial upon the question of the amount to be allowed to them as trustees' attorneys.

[4] The entire business connected with this failure has undoubtedly been a very profitable one to the trustees' attorneys; but that is no reason why their claim to compensation in this matter should not be decided on the merits. The trustees' attorneys have already received $1,500 on account, which should be deducted from the aggregate of $52,500 allowed.

The result is that I fix the allowance to the trustees' attorneys at $51,000